# EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
MEAGHAN KING,

                        Plaintiff,

                        v.

OGURY, INC. d/b/a OGURY LIMITED and
EVAN RUTCHIK, in his individual and
professional capacities,

                        Defendants.
------------------------------------------------------------ X

Case No.:

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff Meaghan King alleges through her counsel Wigdor LLP, as against Ogury, Inc. d/b/a Ogury Limited ("Ogury" or the "Company") and Evan Rutchik, in his individual and professional capacities, (together "Defendants") as follows:

**PRELIMINARY STATEMENT**

1. Meaghan King is a highly successful ad-sales executive. In 2018, she joined Ogury hoping to advance her career at one of the fastest growing advertising companies in the world. Sadly, she became the sexual target of Evan Rutchik, the Company's then Chief Revenue Officer. While on a business trip, Rutchik insisted that King show him her room, urged her to change into a bathing suit to "loosen up" the Company's male clientele and pressed his groin against her from behind while whispering that he was in an "open relationship." King eventually complained about Rutchik's sexual harassment to the Company's Human Resources ("HR") department. Ogury promptly fired King. It then promoted Rutchik to President of the Americas.

2. Defendants' actions violated the anti-discrimination and anti-retaliation provisions of the New York State Human Rights Law, *N.Y. Exec. Law §§ 290 et seq.*

("NYSHRL") and the New York City Human Rights Law, *N.Y.C. Admin. Code §§ 8-101 et seq.* ("NYCHRL").

## ADMINISTRATIVE PROCEDURES

3. Plaintiff will file a Charge of Discrimination and Retaliation with the Equal Employment Opportunity Commission ("EEOC") and seek leave to file an Amended Complaint alleging violations of Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e et seq.* ("Title VII"), following the EEOC's issuance of a Notice of Right to Sue.

4. Pursuant to NYCHRL § 8-502, Plaintiff will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel within ten days of its filing, thereby satisfying the notice requirements of this action.

5. Plaintiff has complied with all prerequisites to filing this action.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is a diversity of citizenship among the parties and this action involves an amount in controversy in excess of $75,000, excluding interests and costs. Plaintiff resides in Melbourne, Australia and was employed in New York, New York. Defendant Ogury is a Delaware-registered foreign business corporation with operations in New York, New York and, upon information and belief, Defendant Evan Rutchik resides in New York, New York.

7. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred there. Defendant Ogury has business operations located in this District, and Plaintiff's employment and performance occurred in this District.

2

**PARTIES**

8. Plaintiff Meaghan King is a resident of Melbourne, Australia, and was a Sales Manager at Defendant Ogury in New York, New York. At all relevant times, King was an "employee" and/or "eligible employee" under all applicable statutes.

9. Defendant Ogury, Inc. d/b/a Ogury Limited is a Delaware-registered foreign business corporation with operations in New York, New York. At all relevant times, Ogury was an "employer" and/or "covered employer" under all relevant statutes.

10. Defendant Evan Rutchik was the Chief Revenue Officer at Ogury in New York, New York. Rutchik participated in the unlawful acts and was an "aider and abettor" under all relevant statutes.

**FACTUAL ALLEGATIONS**

**I. KING'S PROFESSIONAL BACKGROUND**

11. In 2006, King earned a degree in Event Management from Swinburne University of Technology.

12. In January 2017, MiQ Digital, a programmatic advertising company that used data analytics to create innovative advertising campaigns, hired King as an Account Executive. King was an excellent performer, substantially growing the company's business portfolio.

13. In late 2017, Ogury began to recruit King aggressively.

14. For her part, King relished the opportunity to work at a cutting-edge digital advertising company like Ogury, the creator of the first digital marketing engine focused on user choice.

3

15. Moreover, as an early employee in a rising technology startup, King saw an opportunity to grow with the Company both professionally and financially. Indeed, King received stock options and, thus, a unique opportunity to share in Ogury's bright financial future.

16. King excelled at her job. During 2018 and 2019, King was a top seller for Ogury. King also expanded Ogury's portfolio for the Interpublic Group of Companies while earning substantial praise from Ogury's clients for her tireless and outstanding work. For example, an executive at a prominent advertising agency described King as her favorite Ogury salesperson. Another executive at one of the country's largest advertising agencies told King, "I would work with you anywhere. You understand digital, marketing and data."

17. In or about December 2018, King's supervisor and the Company's Director of Sales, Meredith Tehan, assured King that King would be promoted to Sales Director in 2019.

18. By all accounts, King's future at Ogury looked bright.

II. **RUTCHIK SEXUALLY HARASSES KING**

19. Unfortunately, King was the victim of sexual harassment.

20. Initially, Rutchik (King's boss's boss) expressed an interest in King's career. As the Chief Revenue Officer and one of the most powerful men in the Company, Rutchik promised to mentor King to ensure her success.

21. In fact, Rutchik sought to lure King into an unwelcome sexual relationship.

22. In or around June 2018, Ogury employees, including Rutchik and King, attended a work event in Cannes, France. Ogury rented a spacious villa where most of its employees could stay.

4

23. Rutchik, however, often tried to turn such work events into lascivious parties. For example, it was common knowledge that Rutchik and other male employees often behaved unprofessionally at work events, including using cocaine.

24. The 2018 Cannes event was no different. For example, Rutchik made sure to order an extraordinary amount of alcohol so that Ogury's employees and clients would get drunk.

25. During the event, one of Ogury's clients placed his exposed penis on the shoulder of another client and laughed uproariously, calling it a "wristwatch."

26. For his part, Rutchik repeatedly tried to get King to invite him to her bedroom. For example, Rutchik, who had reserved a hotel room near the villa, inexplicably asked if he could keep his belongings in King's room. King became visibly uncomfortable but was afraid to anger Rutchik. She delicately refused, making an excuse that her room was too far from the main house.

27. Undeterred, Rutchik insisted that King show him her room. Afraid of what Rutchik might do if she refused again, King reluctantly agreed but tried to hurry Rutchik, stating that they had to attend a client barbeque. Upon entering King's room, Rutchik casually strolled around in a domineering fashion and made comments about the layout, giving King the impression that he was "marking his territory" because he planned to spend more time in the room with King.

28. Rutchik's predatory behavior escalated. During the barbeque, Rutchik complained to King that the party was not raucous enough. Rutchik's "solution" was to insist that King change into her bathing suit to "loosen up" the Company's male clients.

5

29. King refused Rutchik's patently sexist request and attended the barbeque in a full-length spaghetti strapped jumpsuit she bought for the occasion. Rutchik, however, insisted on using King as a sexual object. Specifically, later that evening, when King was walking past the pool, Rutchik, dressed only in board shorts, wrapped both of his arms and legs around King's body, engulfing her in a bear hug and tackled her, throwing them both into the pool.

30. Humiliated and ashamed, King ran to her room, intending to remain there for the night to avoid any further attacks by Rutchik. However, King did not want to let Rutchik ruin an invaluable networking opportunity at a new job and returned to the event later that evening. Afraid of what Rutchik might do, King intended to keep a safe distance from Rutchik.

31. Unfortunately, Rutchik tracked her down. While King was in the kitchen reaching into the refrigerator, Rutchik approached King from behind and effectively pinned her in place by put his hands over King's hands. Rutchik then pressed his body against King, rubbing his groin into her backside. Rutchik proceeded to proposition King for sex, whispering in her ear that he was in an "open relationship." King pushed Rutchik away and ran outside.

32. King reported the sexual harassment (including witnessing a client expose his penis) to Tehan, her supervisor at the time. Because Ogury had no dedicated HR department at the time, King did not know to whom else she could complain, especially since her complaints involved one of the most senior men at the Company. King was especially vulnerable as an employee on a work visa who risked deportation if she lost her job with Ogury.

33. Rutchik, however, continued to approach King about sex. In or around September 2018, Rutchik exclaimed that he wanted to have sex with one of King's female clients. Rutchik lamented that it was a "shame" that he was married and, therefore, could only

6

"have" the female client "on the side." King immediately shut down the conversation and abruptly walked away from Rutchik.

### III. RUTCHIK DEMANDS TO KNOW WHETHER KING INTENDS TO COMPLAIN ABOUT SEXUAL HARASSMENT

34. In or about mid-2019, Ogury was forced to conduct anti-harassment training after a male Ogury employee slapped a female client on the buttocks. Ogury largely ignored the sexual assault until another client threatened to pull its business from the Company as a result of the incident. Only then did Ogury fire the harasser and schedule sexual harassment training.

35. After the training, King approached the trainer, an attorney from Cooley LLP ("Cooley"), and asked whether there was a time limit to report sexual harassment. The Cooley attorney told her there was not.

36. Less than an hour later, Rutchik demanded to speak to King privately. King declined, but Rutchik insisted and took her into a conference room. Rutchik disclosed that he knew about King's conversation with the Cooley attorney. He then stared at King in a physically threatening manner while interrogating her about whether she wanted to make a complaint.

37. King, who is several inches shorter than Rutchik, felt intimidated and was visibly shaking during this confrontation. To escape, King stammered that she did not know what the Cooley lawyer was talking about and fled the room.

38. Tellingly, that same day, Rutchik began criticizing King in a way he had not done before, nitpicking e-mails she sent and weighing in on projects that she was working on.

39. As a result, King sent a written complaint to her supervisor, Tehan, detailing Rutchik's sexual harassment and expressing fear of retaliation because Rutchik knew King intended to complain about him to the Cooley attorney.

7

## IV. KING BECOMES THE TARGET OF RETALIATION

40. This was not the only instance of Rutchik's and Ogury's efforts to retaliate against King.

41. For example, once Rutchik got the message that King did not welcome his sexual advances, Rutchik stopped acting as King's mentor. Instead, starting in mid-2019, after King had indicated that she was prepared to complain about his sexual harassment, Rutchik began to micromanage King's work in a way that he had never done previously and unfairly criticize her performance.

42. In addition, Ogury, without explanation, denied King the promotion to Sales Director that she had been promised. (The Company did, however, see fit to promote lower performing men.)

43. In September 2020, King again complained about Rutchik's sexual harassment. Specifically, King reported Rutchik's conduct to her new supervisor, Senior Sales Director Dia Marchionne. According to Marchionne, King was "in tears" when King told her about Rutchik's sexually harassing behavior.

44. Marchionne informed Ogury's HR representative Carrie Pluchino about King's complaints. Moreover, Marchionne told Pluchino that she had taken detailed notes of her conversation with King.

45. On September 24, 2020, King personally repeated her discrimination and retaliation complaints to Pluchino, including having witnessed the exposed penis at the Cannes event.

8

46. Less than one week later, Ogury placed King on a three-month Performance Improvement Plan ("PIP"), threatening to fire King if she did not generate $900,000 in new sales by the end of the year.

47. Marchionne, King's direct supervisor, said there had been no internal discussions about King's purported poor performance prior to King's complaint to HR.

48. Marchionne also told Rutchik that it would take a "miracle" for any employee to generate even $400,000 in sales during that time period in light of the struggles with Ogury's products and the challenges affecting the advertising industry as a result of the COVID-19 pandemic.

49. Marchionne attempted to remedy the situation. She approached the predominately male executive team and accused the Company of "setting [King] up for failure" and asked whether King "should start looking for a new job."

50. On or around October 5, 2020, Pluchino told King that her complaints were meritless.

51. Notably, Pluchino did not even ask Marchionne for her notes from her conversation with King. She also made no attempt to speak with Tehan, who had been aware of King's complaints for years.

52. Upon information and belief, Pluchino failed to meaningfully interview any of the witnesses identified by King, including the clients present during the Cannes trip. Pluchino also failed to investigate King's complaints about a client putting his exposed penis on the shoulder of another client.

9

### V.    OGURY FIRES KING

53.    On October 22, 2020, King, through her attorneys, sent Ogury a letter setting forth, once again, King's complaints of discrimination, sexual harassment and retaliation.

54.    On November 9, 2020, less than three weeks later – and only one month into a three-month PIP – Ogury fired King.

55.    Thereafter, the Company promptly announced that Rutchik had been promoted to President of the Americas, placing him in charge of Ogury's entire American business unit beginning in 2021.

56.    Ogury promoted a man to replace King. Ogury only required King's male replacement to generate $40,000 in sales for the first quarter of 2021 – substantially less than the $900,000 King had to generate to keep her job.

### FIRST CAUSE OF ACTION
**(Discrimination in Violation of the NYSHRL)**
*Against All Defendants*

57.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

58.    By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her gender in violation of the NYSHRL by denying Plaintiff the same terms and conditions of employment available to male employees, including, but not limited to, denying her the opportunity to work in an employment setting free of unlawful discrimination, denying her a promotion and terminating her employment.

59.    Defendant Rutchik has discriminated or aided and abetted the discrimination against Plaintiff by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy the discriminatory conduct.

60. As a direct and proximate result of the unlawful discriminatory conduct committed by Defendants in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled an award of monetary damages and other relief.

61. As a direct and proximate result of the unlawful conduct committed by Defendants in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

62. Defendants' unlawful and discriminatory actions were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)
*Against All Defendants*

63. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

64. By the actions described above, among others, Defendants retaliated against Plaintiff for complaining about unequal treatment on the basis of sex by altering her working conditions, including by, *inter alia*, putting her on a performance improvement plan and terminating her employment.

65. As a direct and proximate result of the unlawful retaliatory conduct committed by Defendants in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary

11

and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

66. As a direct and proximate result of the unlawful retaliatory conduct committed by Defendants in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

67. Defendants' unlawful and retaliatory actions were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under the NYSHRL, for which Plaintiff is entitled to an award of punitive.

### THIRD CAUSE OF ACTION
**(Aiding and Abetting in Violation of the NYSHRL)**
*Against Defendant Rutchik*

68. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

69. Defendant Rutchik knowingly and maliciously aided and abetted the unlawful employment practices, discrimination and retaliation against Plaintiff in violation of the NYSHRL.

70. As a direct and proximate result of the unlawful conduct of Defendant Rutchik in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

71. As a direct and proximate result of the unlawful conduct of Defendant Rutchik in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

72. The unlawful actions of Defendant Rutchik were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

**FOURTH CAUSE OF ACTION**
**(Discrimination in Violation of the NYCHRL)**
*Against the All Defendants*

73. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

74. By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her gender in violation of the NYCHRL by denying Plaintiff the same terms and conditions of employment available to male employees, including, but not limited to, denying her the opportunity to work in an employment setting free of unlawful discrimination, denying her a promotion and/or terminating her employment.

75. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled an award of monetary damages and other relief.

76. As a direct and proximate result of Defendants' unlawful conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety,

loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

77. Defendants' unlawful and discriminatory actions were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL)
*Against All Defendants*

78. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

79. By the actions described above, among others, Defendants retaliated against Plaintiff for complaining about unequal treatment on the basis of sex by altering her working conditions, including by, *inter alia,* putting her on a performance improvement plan and/or terminating her employment.

80. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

81. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

14

82. Defendants' unlawful and retaliatory actions were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

### SIXTH CAUSE OF ACTION
### (Aiding and Abetting in Violation of the NYCHRL)
*Against Defendant Rutchik*

83. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

84. Defendant Rutchik knowingly and maliciously aided and abetted the unlawful employment practices, discrimination and retaliation against Plaintiff in violation of the NYCHRL.

85. As a direct and proximate result of the unlawful conduct of Defendant Rutchik in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

86. As a direct and proximate result of the unlawful conduct of Defendant Rutchik in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

87. The unlawful actions of Defendants Rutchik were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
**(Discrimination in Violation of the New York City Victim of Sex Offenses Law § 8-107(27))**
***Against All Defendants***

88. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

89. New York City makes it unlawful for an employer to discriminate against an employee who has been the victim or perceived victim of a sexual offense.

90. Rutchik's conduct, in pinning Plaintiff in place and rubbing his groin against her backside, constitutes a sexual offense.

91. By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her status as a victim of sexual offense by denying Plaintiff the same terms and conditions of employment available to male employees, including, but not limited to, denying her the opportunity to work in an employment setting free of unlawful discrimination, denying her a promotion and/or terminating her employment.

92. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the law, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled an award of monetary damages and other relief.

93. As a direct and proximate result of Defendants' unlawful conduct in violation of the law, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

94. Defendants' unlawful and discriminatory actions were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so

16

reckless as to amount to such disregard of Plaintiff's protected rights under the law, for which Plaintiff is entitled to an award of punitive damages.

**EIGHTH CAUSE OF ACTION**
**(Retaliation in Violation of the New York City Victim of Sex Offenses Law § 8-107(27))**
*Against All Defendants*

95. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

96. By the actions described above, among others, Defendants retaliated against Plaintiff on the basis of her complaints of discrimination as a victim of sexual offense by denying Plaintiff the same terms and conditions of employment available to male employees, including, but not limited to, terminating her employment.

97. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the law, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled an award of monetary damages and other relief.

98. As a direct and proximate result of Defendants' unlawful conduct in violation of the law, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

99. Defendants' unlawful and retaliatory actions were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under the law, for which Plaintiff is entitled to an award of punitive damages.

17

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enters judgment in her favor and against the Defendants for the following relief:

A. A declaratory judgment that the actions, conduct and practices of the Defendants complained of herein violate the laws of the United States, the State of New York and the City of New York;

B. An award of damages against the Defendants, in an amount to be determined at trial, plus interest, to compensate Plaintiff for all monetary and/or economic damages;

C. An award of damages against the Defendants, in an amount to be determined at trial, plus interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Plaintiff's emotional distress;

D. An award of punitive damages in an amount to be determined at trial;

E. Prejudgment interest on all amounts due;

F. An award of Plaintiff's reasonable attorneys' fees and costs; and

G. Such other and further relief as the Court may deem just and proper.

18

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: March 1, 2021
       New York, New York                               Respectfully submitted,

                                                               **WIGDOR LLP**

                                                               By: _____
                                                                      Valdi Licul
                                                                      Renan F. Varghese

                                                               85 Fifth Avenue
                                                               New York, NY 10003
                                                               Telephone: (212) 257-6800
                                                               Facsimile: (212) 257-6845
                                                               vlicul@wigdorlaw.com
                                                               rvarghese@wigdorlaw.com

                                                               *Counsel for Plaintiff*