UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
MEAGHAN KING,                                              :
                                                           :   Case No.: 21-cv-01752 (JPO)(SDA)
                           Plaintiff,                      :
                                                           :
        v.                                                 :
                                                           :
OGURY, INC. d/b/a OGURY LIMITED and                        :
EVAN RUTCHIK, in his individual and                        :
professional capacities,                                   :
                                                           :
                           Defendants.                     :
------------------------------------------------------------ X

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT OGURY, INC. D/B/A OGURY LIMITED'S MOTION TO COMPEL ARBITRATION AND DISMISS THIS ACTION

**WIGDOR LLP**

Valdi Licul
Renan F. Varghese

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com
rvarghese@wigdorlaw.com

*Counsel for Plaintiff*

**PRELIMINARY STATEMENT**

Defendant Ogury, Inc. d/b/a Ogury Limited ("Ogury," the "Company" or "Defendant") seeks to force former employee Plaintiff Meaghan King ("Plaintiff") to arbitrate her claims of sexual harassment and retaliation against the Company. Ogury's problem is that it cannot produce the original arbitration agreement it claims King signed. Rather, it seeks to rely on a copy that King swears she did not sign. Mysteriously, Ogury does not claim that the original was lost or destroyed despite King's numerous requests for the original. Nor has it made any effort to explain when or how the copy was created, by whom, where it has been stored and why the original is no longer available. These failures are fatal to Ogury's motion. The Federal Rules of Evidence require that Ogury either produce an original of the agreement that it seeks to enforce, Fed. R. Civ. P. 1002, or prove that the original was lost. Fed. R. Civ. P. 1003. Ogury has done neither. Moreover, even if Ogury could make the necessary showing, King would nevertheless be entitled to take discovery regarding the legitimacy of the copy Ogury has produced.[1]

**FACTUAL SUMMARY**

King began her employment with Ogury in February 2018. Declaration of Meaghan King in Opposition to Defendant's Motion ("King Decl.") at ¶ 2. At the time, Ogury did not ask that she sign an employment agreement. King Decl. at ¶ 3. In July 2018, Jimmy Liu, the Company's Financial Controller, sent King an employment agreement (the "Draft Agreement") for execution. Declaration of Valdi Licul in Opposition to Defendant's Motion ("Licul Decl.") at Ex. A, pp. 3-4; King Decl. at ¶ 4. King objected to the draft presented by Liu and refused to

---

[1] Defendant Evan Rutchik, King's boss and eventual harasser, has not joined Ogury's motion nor has he appeared in this action.

1

sign. King Decl. at ¶¶ 5-6. Five months later, in December 2018, Liu again asked King to sign the Draft Agreement and again King refused. Licul Decl. at Ex. A, pp. 2-3; King Decl. at ¶¶ 7-8.

The next year, in 2019, Rutchik, King's boss and eventual harasser, stated that he needed King to sign the Draft Agreement. King Decl. at ¶ 9. King refused again, explaining that she would not sign the agreement as written. King Decl. at ¶ 10. Eventually, King, Rutchik and King's direct supervisor, Meredith Tehan, met in a conference room to modify the agreement. King Decl. at ¶ 11. King proceeded to physically mark up the Draft Agreement using a pen, crossing out certain terms and inserting language for other terms before signing that version of the agreement. King Decl. at ¶ 18. Rutchik did not sign the agreement. Nor did he nor anyone at Ogury ever provide King with a countersigned copy. King Decl. at ¶ 20.

On November 9, 2020, Ogury fired King after she complained that Rutchik propositioned her for sex by, among other things, coming up behind her, whispering in her ear that he was in an "open relationship" and pressing his groin against her backside. Dkt. No. 1 at ¶¶ 1, 31. On October 22, 2020, King, through her counsel, sent a demand letter to Ogury. Id. at ¶ 53. Unable to resolve the matter, on March 1, 2021, King filed the instant action. See Dkt. No. 1.

Only nine days later, on March 10, 2021, Ogury suddenly claimed that King signed an employment agreement with an arbitration clause. Licul Decl. at Ex. B, pp. 2-3. Ogury's purported agreement, however, was entirely "clean." It contained none of the visible modifications, handwritten or otherwise, that King made prior to signing. Licul Decl. at Ex. B, pp. 4-14. Moreover, Ogury's agreement included a signature from Ogury's CEO Thomas Pasquet dated February 12, 2018, one year before King affixed her signature after making handwritten changes. Licul Decl. at Ex. B, p. 13. In an effort to clear up the confusion, King, through her counsel, repeatedly requested that Ogury produce the original agreement or some

2

evidence of the source of the copy, such as "e-mails where a scanned version of the document was shared internally." Licul Decl. at Ex. C, p. 4. Inexplicably, Ogury refused, Licul Decl. at Ex. C, generally, and filed this motion instead.

## ARGUMENT

**I.      APPLICABLE STANDARD**

In adjudicating a motion to compel arbitration, "the court applies a standard similar to that applicable for a motion for summary judgment. . . If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). As with all summary judgement motions, "the court must draw all reasonable inferences in favor of the non-moving party." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016).

**II.     OGURY HAS FAILED PROVE THE EXISTENCE OF AN AGREEMENT TO ARBITRATE**

In determining whether to compel arbitration, "a court must first determine whether the parties entered into an agreement to arbitrate their dispute." Rightnour v. Tiffany & Co., 239 F. Supp. 3d 744 (S.D.N.Y. 2017). This threshold issue is a matter of state contract law to which the Federal Arbitration Act's "presumption of arbitrability does not apply." Christensen v. Nauman, 73 F. Supp. 3d 405, 410 (S.D.N.Y. 2014). Rather, under New York law, the moving party – in this case Ogury – must establish a "clear, explicit and unequivocal" agreement to arbitrate that does not "depend upon implication or subtlety." Matter of Waldron (Goddess), 61 N.Y.2d 181, 183-84 (N.Y. 1984) (citations omitted); see Rightnour, 239 F. Supp. 3d at 750 ("The agreement to arbitrate must be proved by a preponderance of the evidence.").

Here, Ogury has not, nor can it, meet its burden, as it has failed to produce the original agreement it claims King signed. See Fed R. Evid. 1002 ("[a]n original writing . . . is required in

3

order to prove its content"). Nor can Ogury prove the existence of an agreement to arbitrate through alternative means. The best evidence rule "establishes a presumption that '[a]n original writing . . . is required in order to prove its content.'" Bobcar Media, LLC v. Aardvark Event Logistics, Inc., 354 F. Supp. 3d 375, 382 (S.D.N.Y. 2018) (Oetken, J.) (quoting Bandler v. BPCM NYC, Ltd., No. 12 Civ. 3512, 2014 WL 5038407, at *7 (S.D.N.Y. Sept. 29, 2014)). A limited exception exists where "all the originals are lost or destroyed, and not by the proponent acting in bad faith." Id. (quoting Fed. R. Evid. 1004(a)). However, "the party seeking to prove the contents of the writing must establish a proper excuse for the nonproduction of the document and that the original did exist." Id. (quoting Crawford v. Franklin Credit Mgmt. Corp., No. 08 Civ. 6293, 2015 WL 1378882, at *4 (S.D.N.Y. Mar. 26, 2015)).

Ogury has not even attempted to make this threshold showing. There is nothing in Ogury's submissions – including from Rutchik who claims to have been in possession of the document with King's original signature – explaining what happened to the original agreement. In short, "[t]he [c]ourt is left with no evidence on which to conclude that an original . . . document was actually lost." Id.[2]

Even if, at this late stage, Ogury could muster a conclusory statement from Rutchik that the original document was lost, King would nonetheless be entitled to discovery on the issue. King's sworn statement, which must be accepted as true for purposes of this motion, makes plain that she did not sign the agreement Ogury relies on. Indeed, Ogury's agreement appears to have been cobbled together from a patchwork of other documents, including a copy of King's

---

[2] Rutchik's explanation that the purported agreement was "kept by Ogury in the ordinary course of its regularly conducted business activities" is beside the point. Dkt. No. 12 at ¶ 13. King has not challenged Ogury's document on hearsay grounds. She instead has challenged the document under the best evidence rule, which requires that Ogury either produce the original or, as a threshold matter, prove that the original was lost.

signature in 2019 and Patchett's signature from one year earlier.  Moreover, Ogury's decision to invoke the document at the last minute while refusing to explain where it came from raises numerous issues as to its providence, which require discovery.  For example, King should be given the opportunity to question Rutchik about how he altered the agreement and what he did with it one King signed it.[3]  Similarly, King can seek to depose Patchet, Ogury's signatory, and Tehan, who was present at the agreement's signing.  See Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co., 263 F.3d 26, 32 (2d Cir. 2001) ("if a party alleges that a contract is void and provides some evidence in support, then the party need not specifically allege that the arbitration clause in that contract is void, and the party is entitled to a trial on the arbitrability issue pursuant to 9 U.S.C.A. § 4"); Accardo v. Equifax, Inc., No. 18 Civ. 5030 (JS)(AKT), 2019 WL 5695947, at *6 (E.D.N.Y. Aug. 9, 2019) ("In a typical motion to compel arbitration ... some discovery may be allowable or necessary").

---

[3] For these same reasons, Fed. R. Evid. 1003 cannot rescue Ogury.  The Rule does not permit a party to submit a duplicate in lieu of an original document where, as here, "a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Civ. P. 1003.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to compel arbitration and dismiss the Complaint should be denied in its entirety.

Dated: April 13, 2021
      New York, New York

Respectfully Submitted,

**WIGDOR LLP**

By: _____
    Valdi Licul
    Renan F. Varghese

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com
rvarghese@wigdorlaw.com

*Counsel for Plaintiff*