# Exhibit A



REDACTED

---------- Forwarded message ---------
From: **Jimmy Liu** <jimmy@ogury.co>
Date: Wed, 19 Dec 2018 at 6:43 AM
Subject: Fwd: Your Ogury Employment Agreement

To: Meaghan King <meaghan.king@ogury.co>
Cc: Meaghan King <meaghan.m.king@gmail.com>

Hi Meaghan,

I am catching up on some administrative stuff before year end, and this is a major one. We need to have this done as I never got your sign one back. Please review and let me know of any question, otherwise please sign and return to me asap. Digitally is fine.

Thank you,
Jimmy

**Jimmy Liu**
Financial Controller - U.S.

75 Broad Street, Suite 3000, New York, NY 10004
+1 646 957 6066

www.ogury.co

Ogury is TAG Registered
for higher standards
of transparency

---------- Forwarded message ---------
From: **Jimmy Liu** <jimmy@ogury.co>
Date: Mon, Jul 30, 2018 at 10:27 PM
Subject: Your Ogury Employment Agreement
To: Meaghan King <meaghan.king@ogury.co>

Hi Meaghan,

I am catching to some long overdue tasks, and this is one of them. Please forgive me on the delay.

Attached please find your Ogury employment agreement. Please review and let me know if there is any question. If everything is in order please sign and I'll have Thomas counter-sign for you.

Thank you,
Jimmy

2

**Jimmy Liu**
Financial Controller - U.S.

75 Broad Street, Suite 3000, New York, NY 10004
+1 646 957 6066

www.ogury.co

Ogury is TAG Registered
for higher standards
of transparency

<u>**EMPLOYMENT AGREEMENT**</u>

THIS EMPLOYMENT AGREEMENT (this "**Agreement**") is made as of February 12th, 2018 (the "**Effective Date**"), by and between Ogury Inc., a Delaware corporation (the "**Company**"), and Ms Meaghan King, 253 East 10th Street, Apt 19, New York, New York, 10009, (the "**Employee**"). Employee's employment with the Company, pursuant to the terms herein, shall commence no later than February 12th, 2018 or such other date as may be mutually agreed by Company and Employee (the "**Commencement Date**").

**PRELIMINARY STATEMENT**

The Company wishes to employ Employee, and Employee wishes to accept such employment, on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the forgoing, the mutual covenants and agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1. **Responsibilities**. Employee will perform the duties of Sales Manager under the direction of the Head of US Sales or his designee and in accordance with the policies of the Company (the "**Policies**"), faithfully and to the best of Employee's ability. Employee will be responsible for the development of Ogury's US sales within the United States of America, its dependencies and possessions (the "**Territory**"). Employee's main duties and functions will include, but are not limited to, the development and the implementation the sales of the Company within the Territory, and negotiation new partnerships with media agencies and advertisers.

In addition, Employee will be responsible for such additional duties and obligations as may be determined by the Company in its sole discretion from time to time (collectively with the duties listed above, the "**Responsibilities**"). The Company will retain full direction and control over the manner, means, and methods by which Employee performs the Responsibilities and over the place or places at which the Responsibilities shall be performed. The Company may at any time require Employee to work at any other location of the Company or of any Company Group within a reasonable commuting distance from Employee's place of employment, as set forth in <u>Section 4</u> below. For the purposes hereof, the term "**Company Group**" means the Company and its Affiliates in the Territory and Europe, and the term "**Affiliate**" means any person controlling, controlled by, or under common control with any other person.

No general working hours have been fixed, and Employee is expected to work whatever hours are necessary to perform the Responsibilities satisfactorily, using Employee's full time and best efforts. Employee's position is an exempt position, so Employee will not receive separate or additional remuneration for work in excess of forty (40) hours per week. Employee agrees not to accept any other paid work with another company unless previously approved by the Company.

2. **Compensation.** In consideration of Employee's performance of his/her obligations under the Agreement, Employee shall be entitled, subject to applicable Federal, state, and local withholding obligations, to the following:

- a base salary, payable in accordance with the regular payroll practices and Policies of the Company, at the rate of $ 125,000 per annum (the "**Base Salary**"), which may be reviewed and

   modified by the Company, in its absolute discretion, at least once per calendar year;

   - a discretional bonus scheme operated by the Company. This bonus will be paid on a quarterly basis and shall be calculated as 4% of the net amount of billable campaigns signed by the Employee and invoiced from previous quarter. Notwithstanding anything to the contrary set forth herein, if Employee is no longer employed by the Company when Employee's Bonus is payable, or if Employee notifies the Company of Employee's resignation from the Company prior to the Company's payment of the Bonus, in each of the foregoing cases, if any, and as set forth below, then Employee shall not be eligible for any Bonus whatsoever.

   3. **Business Expenses.**  In accordance with the Company's Policies, Employee shall be entitled to reimbursement for reasonable travel and other business expenses paid or incurred by Employee in the performance of Employee's duties under this Agreement, subject to the Company's approval.  The Company's Policies will be provided to Employee in the Company's Employee Handbook during Employee's orientation with the Company.

   4. **Place of Employment.**  Employee's principal place of business shall be a designated office in New York, New York. Employee, based on business needs, will be required to travel from time to time at such places the Company may from time to time designate.

   5. **Employee Benefits.**  Employee shall be entitled to participate in the employee benefit plans, policies, programs and arrangements, as may be established or amended from time to time, that are provided generally to employees of the Company to the extent Employee meets the eligibility requirements for any such plan, policy, program or arrangement.  The foregoing shall not be construed to require the Company to establish and/or maintain any such plans or to prevent the Company from modifying or terminating such plans at any time (pursuant to their terms) and in the Company's sole discretion once established.

      a. <u>Healthcare and Dental Benefits</u>.  Employee will be eligible to participate in the Company's healthcare and/or dental benefits packages at such time as such packages have been established, as set forth above. The Company currently offers health care and dental benefits through Trinet Corporation which offers a selection of different plans. Employee will be 80% covered by the Company for medical and dental benefits through a plan selected by the Company (the "Selected Plan"). Employee may select a different plan with a higher premium and shall be responsible, in such case, for paying the difference between the cost of such plan and the Selected Plan.

Notwithstanding anything to the contrary set forth herein, the Company expressly reserves the right to modify, substitute, or eliminate such benefits at any time.

      b. <u>Paid Time Off</u>.  Unless the Company authorizes otherwise in writing, Employee shall be entitled to the following accrued, Paid Time Off (PTO) per calendar year.  For the avoidance of doubt, Employee shall carry over no more than five (5) unused PTO days from one calendar year to the next.  PTO may be used for vacation or illness.

Accrued PTO can only be carried over one calendar year. Vacation days must be requested by Employee, in writing, and previously approved by Employee's Supervisor.

2

| Period of Service | Paid Time Off |
|---|---|
| 0 up to 1 year | 15 days (10.00 hours / month) |
| years 2 and 3 | 20 days (13.33 hours/ month) |
| Over 4 years | 25 days (16.67 hours / month) |

    c. <u>National Holidays</u>.  Subject to applicable law, or as otherwise set forth in the Employee Handbook, Employee shall be entitled to the following holidays:
- New Year's Day – January 1st or the first Monday of the year
- Martin Luther King Day – Third Monday in January
- Presidents Day – Third Monday in February
- Good Friday – Friday before Easter
- Memorial Day – Last Monday in May
- Fourth of July
- Labor Day – First Monday in September
- Thanksgiving – Last Thursday and Friday in November (2 days)
- Christmas- December 24th and 25th (if on the weekend, the preceding Friday and following Monday) (2 days)

    6.  **Unfair Competition.**  The Company may, at its sole discretion, at any time up to and including the tenth (10th) day after the termination of Employee's employment hereunder for any reason whatsoever, give Employee written notice of the Company's election to require Employee to adhere to the covenants and limitations set forth in this Section 6 (the "**Unfair Competition Election**").  Such Unfair Competition Election notice shall specify a period of up to twelve (12) months following the termination of Employee's employment (the "**Unfair Competition Period**").  Through the end of the Unfair Competition Period, Employee shall not, without the prior written consent of the Company, directly or indirectly and whether as shareholder, member, partner, or principal, or as agent, employee, executive, officer, director, consultant, independent contractor, or otherwise, alone or in association with any other person, carry on, or be engaged, concerned with, or take part in, or render services to, or own, share in the earnings of, or invest in the stocks, bonds, or other securities of, any person or business entity engaged in the mobile data collection and mobile advertising business and related products and services for the advertising and related industries, or any business conducted by the Company or its Affiliates at any time during the two (2) years prior to Employee's last day of employment with the Company  (collectively, the "**Restricted Business**"), (a) in the State of New York, (b) anywhere within a [**100-mile**] radius of any other location where Employee had operating responsibility for the Company or its Affiliates at any time during the Term (as hereinafter defined), or (c) anywhere else in the Territory; provided that Employee's direct or indirect ownership as an inactive investor of not more than three percent (3%) of the outstanding voting securities of an entity listed for trading on a national stock exchange shall not be deemed a violation of the provisions of this Agreement.  As additional consideration and compensation to Employee, subject to Employee's adherence to the covenants and limitations set forth in this Section 6, the Company shall, for and during the Unfair Competition Period, continue to pay compensation to Employee at the rate equal to 100% of Employee's Base Salary, subject to applicable withholding and in accordance with the Company's regular payroll practices, in the same manner as if Employee continued to be employed by the Company.

    7.  **Non-Solicitation.**  During the period of twelve (12) months following the termination of Employee's employment hereunder for any reason whatsoever, Employee shall not, as shareholder,

3

member, partner, principal, or as agent, employee, executive, officer, director, consultant, independent contractor, or otherwise, for himself/herself or on behalf of any other person or entity (except the Company or any member of the Company Group, in either case at the Company's request), directly or indirectly (a) approach or solicit business from any person or entity which, at any time during the two (2) years prior to the termination of Employee's employment with the Company, was a customer or supplier of the Company or any member of the Company Group in connection with the Restricted Business; (b) hire, approach, counsel, or attempt to induce any person who, at any time during the two (2) years prior to the termination of Employee's employment with the Company, was employed by the Company or any member of the Company Group for which Employee had operating responsibilities, to leave such employment; or (c) aid, assist, or counsel any other person, firm, or corporation to do any of the above.

8. **Termination.**   The term of Employee's employment hereunder shall commence on the Commencement Date and continue thereafter until terminated by either party hereto as set forth in this Section 8 (collectively, the "**Term**").   Employee will have a three (3) months' probationary period, beginning his first day of work. During this probationary period, either the Employee or the Company can terminate the employment contract immediately.   Employee's employment with the Company shall be "at will", meaning that either the Employee or the Company may terminate Employee's employment at any time and for any reason, with or without cause.  Any contrary representations that may have been made to Employee are superseded by this Agreement.  Although Employee's title, compensation, benefits, and the Responsibilities, as well as the Company's personnel Policies and procedures may change from time to time, the "at will" nature of Employee's employment may only be changed in an express written agreement signed by Employee and the Company.  If Employee intends to resign voluntarily, Employee must notify the Company in writing, as far as possible in advance but in no event with less than one (1) month notice.   In this instance, the Company may, at its sole discretion, terminate Employee's employment under this Agreement at any time and make payment in lieu of such one (1) month notice equivalent to the Base Salary and contractual benefits set forth herein.

Upon termination, Employee shall have no further rights hereunder, except as specifically provided in this Agreement.

9. **Non-Disparagement.**   Employee shall not, at any time during the Term or thereafter, disparage the business of the Company or any member of the Company Group or any Affiliate.

10. **Proprietary and Confidential Information.**  Employee recognizes and acknowledges that the business of the Company is highly competitive and that during the Term Employee shall have access to significant proprietary and confidential information belonging to the Company and the other members of the Company Group.  Employee therefore covenants and agrees that, during the Term and at all times thereafter, Employee will not use (other than in furtherance of the Company's business interests during the Term) or disclose any confidential or proprietary information of the Company or any member of the Company Group, including, but not limited to, patents, patent rights, inventions and intellectual property rights, techniques, know-how, trade secrets, software, technical designs, trademarks, trademark rights, trade names, trade name rights, service marks, service mark rights, copyrights, customer and supplier lists, manufacturing processes, business plans, strategic plans, marketing information, and other business and financial information of or related to the Company or any member of the Company Group (collectively, "**Information**").  Employee shall retain all such Information in trust for the sole benefit of the Company.

4

11. **Materials, Records, and Documents.**  Without limitation to the provisions of Section 8 hereof, any and all samples, advertising materials, written materials, records, and documents made by Employee or coming into Employee's possession during the Term or thereafter, concerning the business or affairs of the Company or any other member of the Company Group, together with all intellectual and industrial property rights attached thereto and all Information, shall be the sole and exclusive property of the Company; and, at any time during the Term at the request of the Company or upon termination of Employee's employment, Employee shall promptly deliver the same to the Company or any other member of the Company Group designated by it, including, without limitation, Information, customer lists, sales records, technical information and data, software, manuals, correspondence, notes, reports, papers and other documents (together with any summaries, extracts or copies thereof), company car, keys, credit cards and passes.  Employee must not retain copies of any Company property in any form.  Employee must, if so required by the Company, confirm in writing that he/she has complied with his/her obligations under this provision.  Employee shall render to the Company or to any other member of the Company Group designated by it such reports of the activities undertaken by Employee or conducted under Employee's direction pursuant hereto during the Term as the Company or any other member of the Company Group may reasonably request.

12. **Inventions.**  Employee hereby agrees that any and all improvements, inventions, discoveries, developments, creations, formulae, processes, methods, designs and works of authorship, and any documents, things, or information relating thereto, whether patentable or not (individually and collectively, "**Work Product**") within the scope of or pertinent to any field of business or research in which the Company or any of its Affiliates is engaged or, to Employee's knowledge, is considering engaging, which Employee may conceive or make, or may have conceived or made during the Term, whether before or after the date hereof and whether alone or with others, at any time during or outside of normal working hours, and all intellectual property and other proprietary rights attached thereto (including any and all goodwill related thereto or resulting therefrom) shall be and remain the sole and exclusive property of the Company.  The Company shall have the full right to use, assign, license or transfer all rights to or relating to Work Product.  Employee shall, whenever reasonably requested to do so by the Company (whether during the Term or thereafter), at the Company's expense, execute any and all applications, assignments, or other instruments, and, with due consideration for Employee's obligations with respect to any new employment or business activity after the Term, do all other things (including giving testimony in any legal proceeding) which the Company may deem necessary or appropriate in order to (a) apply for, obtain, maintain, enforce, or defend letters, patent, trademark or copyright registrations in the United States or any other country for any Work Product, or (b) assign, transfer, convey, or otherwise make available to the Company any right, title or interest which Employee might otherwise have in any Work Product.  Employee shall promptly communicate, disclose, and, upon request, report upon and deliver all Work Product to the Company, and shall not use or permit any Work Product to be used for any purpose other than on behalf of the Company and its Affiliates, whether during the Term or thereafter.  As to any intellectual property rights used by Employee while performing Employee's duties and Responsibilities hereunder, whether such rights are vested or pending, which Employee owns or controls in whole or in part and solely to the extent that such rights are not Work Product, Employee does not assign such rights to the Company but Employee does grant to the Company (or its designee) a non-exclusive, non-transferable (except to any Affiliate of the Company), perpetual, irrevocable, royalty-free, world-wide license thereto with the right to sublicense, make, have made, use, sell, offer to sell, import, reproduce, have reproduced, prepare derivative works of, distribute, and otherwise dispose of any product or documents in relation therewith.

13. **Injunctive Relief, Specific Performance.**  In view of the Responsibilities which Employee shall undertake hereunder, which shall place Employee in a position of confidence and trust with the customers and other executives of the Company and other members of the Company Group, and provide Employee with access to Information, Work Product, materials (including samples), records, and documents of the Company, Employee expressly acknowledges that the restrictive covenants set forth in Sections, 6, 7, 9, 10, 11 and 12 hereof are reasonable and necessary to protect and maintain the proprietary and other legitimate business interests of the Company and other members of the Company Group and that the enforcement of such restrictive covenants shall not prevent Employee from earning a livelihood.  Employee further acknowledges that the remedy at law for any breach or threatened breach of Sections, 6, 7, 9,10, 11 or 12 hereof shall be inadequate and, accordingly, that the Company shall, in addition to all other available remedies, be entitled to injunctive relief without being required to post bond or other security and without having to prove the inadequacy of the available remedies at law.  To the full extent permitted by applicable law, Employee hereby waives trial by jury and agrees not to plead or defend on grounds of inadequate remedy at law or any element thereof in an action by the Company and/or any other member of the Company Group against Employee for injunctive relief or for specific performance of any obligation pursuant to this Agreement.  The period of time during which the provisions of Sections, 6, 7, 9,10, 11 or 12 hereof shall apply shall be extended by the length of time during which Employee is in breach of the terms of Sections, 6, 7, 9,10, 11 or 12  hereof.

14. **Survival.**  Employee's obligations as set forth in Sections, 6, 7, 9,10, 11 or 12, and 24 hereof represent independent covenants by which Employee is and shall remain bound notwithstanding any breach or claim of breach by the Company, and shall survive the termination or expiration of this Agreement.

15. **Notices.**   All notices, demands, or other communications required or provided hereunder shall be in writing and shall be deemed to have been given and received (a) upon delivery, when delivered in person or by a nationally reputable overnight courier; (b) upon transmission, when transmitted by electronic (including e-mail) or facsimile transmission to the respective parties (with confirmation of transmission by the transmitting equipment); or (c) five (5) days after dispatch, when sent by certified or registered mail, postage prepaid, return receipt requested; in each of the foregoing cases, addressed to the parties at the addresses set forth below or at such other addresses as such parties may designate by notice to the other parties, in accordance with the provisions of this Section 15:

| | |
|---|---|
| If to the Company: | Ogury  Inc.<br>75 Broad Street 23rd Floor<br>New York, NY 10004<br>Tel: +1 (929) 308-6479<br>Email:  thomas@ogury.co |
| With a copy (which shall not constitute notice) to: Ogury Ltd | 24 Highbury Grove, N5 2EA London, United Kingdom<br>Attention:  JC de Launay<br>Tel:   +33 6 23 75 13 75<br>E-mail:  jcdl@ogury.co |
| If to Employee: | FAO: Meaghan King<br>253 East 10th Street, Apt 19, New York, New York, 10009 |

6

16. **Governing Law.**  This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York applicable to contracts executed and fully performed within the State of New York excluding any conflicts of law or principles that might refer the governance or construction of this Agreement to the laws of any jurisdiction other than the State of New York

17. **Submission to Jurisdiction.**  Any suit or court proceeding, which in the case of this Agreement shall be limited to actions to enforce injunctive relief and/or specific performance under Section 11 hereof or compel arbitration, arising directly and/or indirectly pursuant to or under this Agreement, may be brought in a Federal or state court located in the County of Kings, State of New York and the parties hereto hereby agree to submit to the jurisdiction of the courts located in the County of Kings, State of New York and waive the defenses of lack of personal jurisdiction, forum non conveniens, and other defenses which result in the transfer of the action to another forum.

18. **Mergers and Consolidation; Assignability.**  If the Company, or any Successor Company (as hereinafter defined) shall at any time be merged or consolidated into or with any other corporation or corporations, or if a majority of the controlling stock or substantially all of the assets of the Company or any such Successor Company are sold or otherwise transferred to another corporation, the provisions of this Agreement shall be binding upon and shall inure to the benefit of the continuing corporation or the corporation resulting from such merger or consolidation or the corporation to which such stock or assets are sold or transferred ("**Successor Company**") and any such assignment of this Agreement shall be binding upon, and this Agreement shall continue to inure to the benefit of, Employee.  This Agreement may be assigned without Employee's consent to any member of the Company Group.  Without Employee's prior written consent, except as provided in the two foregoing sentences, this Agreement shall not be assigned by the Company or by any Successor Company.  This Agreement shall not be assigned by Employee and any purported assignment of rights or delegation of duties under this Agreement by Employee shall be null and void.

19. **Dispute Resolution.**  Without limitation to the provisions of Sections 13 and 17 hereof, any and all controversies, claims, or disputes arising out of or relating to this Agreement or any breach thereof, any and all claims Employee may have against the Company or any officer, director, or employee of the Company, any and all claims the Company may have against Employee, or any and all claims arising out of or relating to Employee's employment with the Company, will be settled solely and finally by arbitration in the City of **New York**, State of New York, with the rules of the American Arbitration Association then in effect in the State of New York, and the rules governing arbitration of disputes under **New York** law.  Arbitration will be the exclusive remedy for all such disputes; no other action may be brought in a court or any other forum (except actions to compel arbitration or to obtain an injunction to enforce any covenants or statutes regarding unfair competition, non-solicitation, trade secrets, or confidentiality or as set forth in Sections 13 and 17 hereof).  Judgment upon such award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof, provided that this Section 19 shall not be construed to eliminate or reduce any right the Company or Employee may otherwise have to obtain a temporary restraining order or a preliminary or permanent injunction to enforce any of the covenants contained in this Agreement before the matter can be heard in arbitration.

20. **Severability.**  If any provision (or part thereof) of this Agreement is held invalid or unenforceable, the remainder shall nevertheless remain in full force and effect.  If any provision is held invalid or unenforceable with respect to particular circumstances, it shall nevertheless remain

7

in full force and effect in all other circumstances.

21. **Entire Agreement.**  This Agreement represents the entire understanding of the parties hereto with respect to the subject matter hereof and thereof and supersedes and replaces in their entireties all prior agreements and understandings, oral or written, between the parties hereto with respect to the subject matter hereof and thereof.  No other representations, promises, agreements or understandings regarding the subject matter hereof and thereof shall be of any force or effect unless in writing, executed by the party to be bound, dated subsequent to the date hereof, and expressly identified as an amendment to this Agreement.

22. **No Waiver.**  The failure at any time of either the Company or Employee to require the performance by the other of any provision of this Agreement shall in no way affect the full right of such party to require such performance at any time thereafter, nor shall the waiver by either the Company or Employee of any breach of any provision of this Agreement be taken or held to constitute a waiver of any succeeding breach of such or any other provision of this Agreement.

23. **Execution.**  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

24. **No Conflict.**  Employee represents and warrants to the Company that Employee is not subject to any applicable law (including, without limitation, immigration law), agreement, order, judgment, or decree of any kind that would prevent Employee from performing the Responsibilities and complying with Employee's obligations hereunder.  Employee acknowledges being instructed that (a) it is the Company's policy <u>not</u> to seek access to, or make use of, trade secrets or confidential business information which are proprietary to third parties, including, but not limited to, competitors or former employers, and (b) Employee shall not, under any circumstances, reveal to the Company or any member of the Company Group, or make use of, trade secrets or confidential business information which are proprietary to third parties.  Employee represents, warrants, and covenants to the Company that Employee has not violated and will not violate any such laws, agreements, orders, judgments, decrees, or instructions.

25. **Headings.**  The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

26. **Authorization to Work in United States.**  As required by law, Employee's employment with the Company is contingent upon, and conditioned by, Employee's submission of satisfactory proof of Employee's identity and legal authorization to work in the United States.

27. **Covenants.**  Employee shall:
   a. no later than their applicable due dates or the termination of Employee's employment (if no other due date has previously been established), fully pay off any outstanding advances, loans, or debts owed to the Company, if any;
   b. on or prior to the termination of Employee's employment, submit any outstanding expense reports to the Company;
   c. as of the termination of Employee's employment, no longer represent that Employee is an employee of the Company and immediately discontinue using the Company's mailing address, telephone number, facsimile machines, voicemail, and e-mail; and

d. upon the Company's request, consider, in good faith, after the termination of Employee's employment, executing a Termination and Release Agreement substantially in the form attached hereto as <u>Addendum B</u> under the conditions set forth therein.

[*Signature page follows*]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

**Ogury Inc.**

By: _____
  Name:  Thomas Pasquet
  Title: CEO
  Date: February 12th, 2018

_____
Meaghan King

10

**ADDENDUM A**

**CALENDAR YEAR OBJECTIVES AND BONUS CONDITIONS**

- Annual sales goals and quarterly targets to be determined and set by Head of U.S. Sales

- Incentive Bonus Structure, on top of standard 4% of invoiced amount; subject to the Company sole discretion to change and/or modify

    o Additional 1% when achieving quarterly target

    o Additional 8% on amount above quarterly goal

    o Additional 2% on amount above annual goal

[Addendum A]