UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

| | |
|---|---|
| MEAGHAN KING, | : |
| | : |
| | : Case No.: 21-cv-01752 (JPO)(SDA) |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| OGURY, INC. d/b/a OGURY LIMITED and EVAN RUTCHIK, in his individual and professional capacities, | : |
| | : |
| | : |
| Defendants. | : |

-------------------------------------------------------------- X

## DECLARATION OF MEAGHAN KING

I, Meaghan King, being duly sworn, deposes and states as follows:

1. I am the Plaintiff in the above-captioned case and therefore have personal knowledge of the facts set forth herein. I submit this Declaration in opposition to Defendant's motion to dismiss the Complaint and compel arbitration.

2. I began my employment with Defendant Ogury, Inc. ("Ogury" or the "Company") in February 2018.

3. Both during the hiring process and when I started with Ogury, I was never asked to sign an employment agreement.

4. It was not until July 2018 that Jimmy Liu, the Company's Financial Controller, sent me an employment agreement (the "Employment Agreement") to sign.

5. After reviewing the Employment Agreement, I objected to several of the terms that Ogury was attempting to unilaterally impose upon me months after I commenced my employment.

6. As a result, I refused to sign the Employment Agreement that was originally given to me.

7. Mr. Liu thereafter followed up in December 2018, again asking me to sign the Employment Agreement.

8. I again refused because I had the same objections.

9. Thereafter, at some point in 2019, I was approached by my supervisor, Defendant Evan Rutchik, who told me that Ogury needed me to sign the Employment Agreement.

10. I explained to him that I could not sign the Employment Agreement as written.

11. Mr. Rutchik, my supervisor at the time, Meredith Tehan, and I then met in a conference room at Ogury where Mr. Rutchik again asked me to sign the Employment Agreement.

12. I again refused, explaining that I did not agree with a number of the terms and did not agree with Ogury's contention that it could change the terms of my employment months after I was hired.

13. Mr. Rutchik responded by asking me to identify the terms to which I objected.

14. Although I did object to the "Unfair Competition" paragraph of the Settlement Agreement, I had additional changes that I felt were necessary before I could sign the Employment Agreement.

15. I therefore proceeded to physically mark up the Employment Agreement using a pen, crossing out certain terms and inserting language for other terms.

16. Although I cannot recall every edit that I had made, I made additional changes to the Unfair Competition section of the Employment Agreement beyond narrowing the types of

businesses that would be deemed competitive. I also think I made changes to other paragraphs of the Employment Agreement beyond changing my address.

17. Mr. Rutchik then looked over the edits that I had made, and agreed that they were reasonable.

18. I then signed the version of the Employment Agreement which included my handwritten edits.

19. Between the time that I made my handwritten edits to the Employment Agreement and the time that I signed it, Mr. Rutchik never left the room.

20. I was never presented with a countersigned version of my Employment Agreement during my employment with Ogury.

21. I never signed a clean version of the Employment Agreement.

22. I was then never provided with a copy of the Employment Agreement that Defendants purported I signed until March 10, 2021, after which I immediately informed Defendants that I had not signed the version of the Employment Agreement upon which they rely.

23. I declare that the foregoing is true and accurate to the best of my knowledge under the penalty of perjury.

Dated: April 13, 2021
       Syndey, Australia

By: _Meaghan King (Apr 13, 2021 06:30 GMT+10)_
                  Meaghan King