UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MEAGHAN KING,

                                        Plaintiff

                    -against-

OGURY, INC d/b/a OGURY LIMITED and EVAN
RUTCHIK, in his individual and professional capacities,

                                        Defendants.

Civil No. 21-CV-01752
(JPO) (SDA)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT
OGURY INC. D/B/A OGURY LIMITED'S MOTION TO COMPEL ARBITRATION
AND DISMISS THIS ACTION**

JACKSON LEWIS P.C.
666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4000

Wendy J. Mellk
Tania J. Mistretta

*Attorneys for Defendant
  Ogury, Inc. d/b/a Ogury
  Limited*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

REPLY STATEMENT OF FACTS.......................................................................... 3

    A.    Plaintiff Ignores Ogury's Attempts to Finalize Her Employment Agreement, and Never Contests the Arbitration Agreement Provision. ......................................................................................... 3

    B.    Mr. Rutchik Meets With Plaintiff to Discuss Her Initial Employment Agreement on February 4, 2019 and Plaintiff Does Not Sign the Initial Employment Agreement During Their Meeting. .......................................................................................... 4

    C.    Ogury Revises Plaintiff's Employment Agreement Which She Signs on February 15, 2019. ............................................................ 4

    D.    Ogury Counter-Signed Plaintiff's Employment Agreement on February 15, 2019, Maintaining an Electronic and Original of Plaintiff's Employment Agreement. ...................................................... 6

ARGUMENT ......................................................................................................... 7

I.    PLAINTIFF CONCEDES HER NEW YORK STATE AND CITY LAW CLAIMS ARE SUBJECT TO ARBITRATION AND FALL WITHIN THE SCOPE OF THE PARTIES' ARBITRATION AGREEMENT............................................................................................... 7

II.    OGURY SATISFIED ITS BURDEN OF ESTABLISHING AN AGREEMENT TO ARBITRATE AND PLAINTIFF FAILS TO RAISE AN ISSUE OF FACT.............................................................................. 8

    A.    Plaintiff's Conclusory Allegations Fail to Raise an Issue of Fact....................................................................................................... 9

    B.    It is Undisputed on This Motion That Plaintiff Did Not Contest The Agreement to Arbitrate Her Claims Warranting an Order Compelling Arbitration. ...................................................................... 11

III.    EVEN IF PLAINTIFF DID NOT SIGN HER EMPLOYMENT AGREEMENT SHE CONSENTED TO ARBITRATE HER CLAIMS BY CONTINUING HER EMPLOYMENT WITH OGURY. ......................... 12

IV.    THE COURT SHOULD DISMISS PLAINTIFF'S ACTION SINCE PLAINTIFF DOES NOT REQUEST A STAY............................................... 13

CONCLUSION..................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>AT&T Corp. v. Syniverse Techs., Inc.</u>,
   No. 12-CV-1812, 2014 U.S. Dist. LEXIS 125256, 2014 WL 4412392
   (S.D.N.Y. Sep. 8, 2014)............................................................................................................7

<u>Barreto v. JEC II, LLC</u>,
   No. 16-CV-9729, 2017 U.S. Dist. LEXIS 116091, 2017 WL 3172827
   (S.D.N.Y. July 25, 2017) .........................................................................................................8

<u>Benzemann v. Citibank N.A.</u>,
   622 F. App'x 16 (2d Cir. 2015) ..............................................................................................13

<u>Buckeye Check Cashing v. Cardegna</u>,
   546 U.S. 440 (2006)...........................................................................................................11, 12

<u>D'Amico v. City of New York</u>,
   132 F.3d 145 (2d Cir. 1998)....................................................................................................10

<u>Dill v. JPMorgan Chase Bank, N.A.</u>,
   No. 19-CV-10947, 2020 U.S. Dist. LEXIS 134496, 2020 WL 4345755
   (S.D.N.Y. July 29, 2020) .........................................................................................................9

<u>Golden Pac. Bancorp v. FDIC</u>,
   375 F.3d 196 (2d Cir. 2004).................................................................................................9, 10

<u>Gonder v. Dollar Tree Stores, Inc.</u>,
   144 F. Supp. 3d 522 (S.D.N.Y. Nov. 2, 2015)........................................................................10

<u>Green Tree Fin. Corp.—Alabama v. Randolph</u>,
   531 U.S. 79 (2000)....................................................................................................................8

<u>Harrington v. Atl. Sounding Co., Inc.</u>,
   602 F.3d 113 (2d Cir. 2010).....................................................................................................8

<u>HDI Glob. SE v. Lexington Ins. Co.</u>,
   232 F. Supp. 3d 595 (S.D.N.Y. 2017).....................................................................................12

<u>Hines v. Overstock.com, Inc.</u>,
   380 F. App'x 22 (2d Cir. 2010) ................................................................................................8

<u>Meyer v. Uber Techs., Inc.</u>,
   868 F.3d 66 (2d Cir. 2017)........................................................................................................9

Oppenheimer & Co. v. Neidhardt,
  56 F.3d 352 (2d Cir. 1995)........................................................................9

Rent-A-Center, W., Inc. v. Jackson,
  561 U.S. 63 (2010).............................................................................11, 12

Rightnour v. Tiffany & Co.,
  239 F. Supp. 3d 744 (S.D.N.Y. 2017).......................................................12

Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.,
  263 F.3d 26 (2d Cir. 2001)..................................................................11, 12

Thomas v. Public Storage, Inc.,
  957 F. Supp. 2d 496 .................................................................................13

Valdez-Mendoza v. Jovani Fashion Ltd.,
  No. 15-CV-7261, 2017 U.S. Dist. LEXIS 17939, 2017 WL 519230
  (E.D.N.Y. Feb. 7, 2017).............................................................................13

Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund,
  661 F.3d 164 (2d Cir. 2011)........................................................................9

## PRELIMINARY STATEMENT

Defendant Ogury, Inc. d/b/a Ogury Limited (hereinafter "Ogury" or the "Company") submits this reply memorandum of law in further support of its motion to compel arbitration and dismiss the Complaint filed by Plaintiff Meaghan King ("Plaintiff") pursuant to the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and 12(b)(6), the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA"), and the Local Rules of this Court.

Critically, in opposition to Ogury's motion, Plaintiff fails to oppose, and effectively concedes the following points:

- Plaintiff signed an Employment Agreement including a provision to arbitrate all claims regarding the Agreement and all employment-related disputes;

- Plaintiff never objected to agreeing to arbitrate her claims;

- Plaintiff's claims in this action fall within the scope of the agreement to arbitrate; and

- Federal law requires the Court enforce Plaintiff's agreement to arbitrate.

Tellingly, nowhere in Plaintiff's opposition, nor in her sworn declaration does she argue or even attempt to claim that she did not agree to arbitrate her claims with Ogury. (Doc. No. 20 generally).[1] Indeed, prior to making the instant application before this Court, counsel for Ogury questioned Plaintiff not once, but four (4) times as to whether Plaintiff was taking the position that she did not agree to arbitrate her claims. (Doc. No. 19-3). In each instance, Plaintiff inexplicably by-passed the question, as Plaintiff again does here in her sworn statement. (Id.).

---

[1] References to documents filed on the Court's docket are referred to as "Doc. _" to reflect the Court's electronically assigned Document Number.

Instead, on opposition Plaintiff argues that she does not recall signing the Employment Agreement produced by Ogury, and maintains that the version of the Employment Agreement she recalls signing was "marked up" – although she conveniently fails to recall any specifics or details regarding any of the markings allegedly affixed thereto, and further fails to provide any information regarding what allegedly haped to this "marked" version of the agreement. (Doc. No. 20).  Further fatal to Plaintiff's argument, Plaintiff does not claim to have "marked up" the key provision in dispute on this motion, Paragraph 19 the Dispute Resolution Paragraph of the Employment Agreement, under which she agreed to arbitrate all claims.  (Doc. No. 20 generally).  In a baseless attempt to avoid arbitration, Plaintiff further argues on opposition – again, without any factual basis or support – that because Ogury did not provide Plaintiff's counsel with an "original" of Plaintiff's Employment Agreement prior to making its motion, that under Federal Rule of Evidence ("FRE") 1002, Ogury has failed to prove the existence of an agreement to arbitrate, and is incapable of succeeding on its motion.

Simply put, these arguments are a red herring.  At no point in time did Ogury suggest to Plaintiff that it did not possess Plaintiff's original Employment Agreement.  (Document No. 19-3).  In fact, Ogury *does have* Plaintiff's original signed Employment Agreement reflecting the original ink signatures of both Plaintiff and Thomas Pasquet, Ogury's Chief Executive Officer, which were affixed on February 15, 2019.  Furthermore, Plaintiff's vague denials and speculation on opposition fail to raise a genuine issue of fact as to her assent to arbitrate her claims, warranting an order dismissing this action and compelling arbitration as a matter of law.

Indeed, even after Ogury communicated to Plaintiff that it was in possession of Plaintiff's original Employment Agreement, as well as electronic correspondence forwarding the fully executed agreement dated February 15, 2019, Plaintiff declined to withdraw her opposition

to Ogury's motion or agree to submit to arbitration. Accordingly, because Plaintiff fails to present any valid argument in opposition to defeat Ogury's motion to dismiss and compel, and persists in this regard with knowledge that her position is baseless, the sheer insufficiency of Plaintiff's arguments justifies an award granting Ogury its attorneys' fees and costs incurred in having to make the instant application.

## **REPLY STATEMENT OF FACTS**

### A.  **Plaintiff Ignores Ogury's Attempts to Finalize Her Employment Agreement, and Never Contests the Arbitration Agreement Provision.**

On July 30, 2018, Jimmy Liu, Ogury's Head of Finance, U.S., emailed Plaintiff a copy of her Initial Employment Agreement requesting she reach out with any questions and barring any, provide a signed copy of the Initial Employment Agreement for Mr. Pasquet to counter-sign on behalf of Ogury. (Declaration of Jimmy Liu, dated April 23, 2021 ("Liu Decl.") at ¶ 4; Exhibit "A" to the Liu Decl. at p. 14; Doc. No. 19-1 at p. 3). Notably, the Initial Employment Agreement attached to Mr. Liu's July 30, 2018 email included a space for Mr. Pasquet to sign the agreement on behalf of Ogury, and below the space the words "February 12th, 2018" were typed in print. (Liu Decl. ¶ 5; Document No. 19-1 at p. 14). The February 12, 2018 date was populated in the Initial Employment Agreement provided to Plaintiff because it was the date Plaintiff commenced employment with Ogury. (Liu Decl. ¶¶ 3, 5; Document No. 19-1 at p. 14). Mr. Pasquet did not sign Plaintiff's Initial Employment Agreement on February 12, 2018, and had not signed the Initial Employment Agreement as of July 30, 2018. (Liu Decl. ¶ 5; Ex. "A" to Liu Decl. at p. 14; Doc. No. 19-1 at p. 14).

Plaintiff ignored Mr. Liu's request, and failed to respond to his July 30, 2018 email, prompting follow-up email requests from Mr. Liu as to the status of Plaintiff's signed agreement on December 18 and December 29, 2018. (Liu Decl. ¶¶ 6-7 ; Ex. "A" to Liu Decl. at p. 12-13).

On January 25, 2019, Plaintiff responded to Mr. Liu's email declining to sign the Initial Employment Agreement as written.  (Liu Decl. ¶ 8).  In response, Evan Rutchik, Ogury's then acting Chief Revenue Officer who was also copied on Mr. Liu and Plaintiff's email, responded to Plaintiff inviting her to discuss her concerns with him regarding the Initial Employment Agreement.  (Liu Decl. ¶ 9; Exhibit "A" to Liu Decl. at p. 9).

**B.** **Mr. Rutchik Meets With Plaintiff to Discuss Her Initial Employment Agreement on February 4, 2019 and Plaintiff Does Not Sign the Initial Employment Agreement During Their Meeting.**

On February 4, 2019, Mr. Rutchik and Plaintiff met to discuss the Initial Employment Agreement, during which time Plaintiff raised concerns regarding Paragraph 6 of the Initial Employment Agreement, the "Unfair Competition" Paragraph.  (Liu Decl. ¶ 10; Rutchik Decl. ¶ 5; Exhibit "A" to Liu Decl. at p. 6).  Plaintiff did not sign the Initial Employment Agreement during this meeting.  (Liu Decl. ¶ 10; Rutchik Decl. ¶¶ 5, 11; Exhibit "A" to Liu Decl. at p. 6).  Following Mr. Rutchik's February 4, 2019 meeting with Plaintiff, Mr. Rutchik invited Plaintiff to send her proposed revisions to the Initial Employment Agreement through "redline" or "tracked changes."  (Liu Decl. ¶ 11; Rutchik Decl. ¶ 6; Ex. "A" to Liu Decl. at p. 6).  Plaintiff never sent any "redline" or "tracked changes" to the Initial Employment Agreement.  (Liu Decl. ¶ 19; Rutchik Decl. ¶ 6; Ex. "A" to Liu Decl. at p. 6).  Instead, Plaintiff communicated to Mr. Rutchik verbally regarding the revisions she desired.  (Rutchik Decl. ¶ 6).  Mr. Rutchik and Mr. Liu worked together to revise the Initial Employment Agreement to address the changes requested by Plaintiff which she communicated verbally to Mr. Rutchik.  (Liu Decl. ¶ 11; Rutchik Decl. ¶ 6; Ex. "B" to Liu Decl.).

**C.** **Ogury Revises Plaintiff's Employment Agreement Which She Signs on February 15, 2019.**

On February 15, 2019 at 3:55 p.m., Mr. Liu sent Mr. Rutchik a word version of

Plaintiff's Initial Employment Agreement so that Mr. Rutchik and Mr. Liu could revise the agreement to address Plaintiff's concerns.  (Liu Decl. ¶ 12; Rutchik Decl. ¶¶ 6-7; Ex. "A" to Liu Decl. at p. 2).   Several lines from Paragraph 6, the "Unfair Competition" paragraph were eliminated by narrowing the types of business that would be considered competition from: "business entity engaged in the mobile data collection and mobile advertising business and related products and services for the advertising and related industries'" to: "business entity whose primary business is engaged in mobile data collection via a proprietary SDK".  (Liu Decl. ¶ 14; Rutchik Decl. ¶ 7; Exs. "A" at ¶ 6 & "B" at ¶ 6 to Rutchik Decl.).   Additional revisions were made to Plaintiff's address in Paragraph 15 of the Employment Agreement titled "Notices."  (Liu Decl. ¶ 14; Rutchik Decl. ¶ 8; Ex. "A" at ¶ 15 & "B" at ¶ 15 to Rutchik Decl.).   No changes were made to Paragraph 19 of the Employment Agreement, the Dispute Resolution Paragraph, under which Plaintiff agreed to arbitrate her claims with Ogury.   (Liu Decl. ¶ 18; Rutchik Decl. ¶ 9; Ex. "A" at ¶ 19 & "B" at ¶ 19 to Rutchik Decl.).  At no time did Plaintiff ever object to or raise any questions regarding Paragraph 19 of the Employment Agreement, the Dispute Resolution Paragraph, under which Plaintiff agreed to arbitrate her claims with Ogury.   (Liu Decl. ¶ 18; Rutchik Decl. ¶ 9 ; Ex. "A" to Liu Decl.; Ex. "A" at ¶ 19 & "B" at ¶ 19 to Rutchik Decl.; Doc. No. 20 generally).

On February 15, 2019 at 4:00 p.m., Mr. Rutchik emailed Mr. Liu the revised word version of Plaintiff's revised Employment Agreement so that Mr. Liu could print it for Mr. Rutchik to have Plaintiff sign.  (Liu Decl. ¶ 13; Rutchik Decl. ¶ 10; Ex. "A" to Liu Decl. at pp. 1-2, 16-25).  Mr. Liu printed the revised Employment Agreement for Mr. Rutchik to meet with Plaintiff and collect her signature.  (Liu Decl. ¶ 15; Rutchik Decl. ¶ 10).  Mr. Rutchik then met with Plaintiff in a conference room in Ogury's office and Plaintiff signed the revised Employment Agreement in Mr. Rutchik's presence on February 15, 2019.  (Rutchik Decl. ¶ 11).

**D.** **Ogury Counter-Signed Plaintiff's Employment Agreement on February 15, 2019, Maintaining an Electronic and Original of Plaintiff's Employment Agreement.**

After Plaintiff signed her Employment Agreement, Mr. Rutchik provided Mr. Liu with Plaintiff's original signed Employment Agreement.  (Liu Decl. ¶ 15).  Mr. Liu immediately brought Plaintiff's signed Employment Agreement to Mr. Pasquet to sign.  (Liu Decl. ¶ 15).  In accordance with Ogury's customary practices, Mr. Liu scanned the fully-executed version of Plaintiff's Employment Agreement to himself using Ogury's scanner, which prompted an email to be sent from "ogury.co@gmail.com" to his email address, forwarding the scanned fully-executed version of Plaintiff's Employment Agreement on February 15, 2019 at 4:55 p.m..  (Liu Decl. ¶ 16; Ex. "B" to Liu Decl.).

Mr. Liu maintained possession of Plaintiff's original ink signed Employment Agreement by placing it in a drawer in his office.  (Liu Decl. ¶ 17).  Mr. Liu continued to maintain possession of Plaintiff's original Employment Agreement until providing it to Ogury's counsel in connection with this motion.  (Liu Decl. ¶ 17).

On Opposition, Plaintiff speculatively argues – with zero factual basis or support – that Ogury is incapable of establishing Plaintiff signed the Employment Agreement with Ogury because it presumably "lost" her original Employment Agreement, and is incapable of demonstrating any basis from which the Court could consider Plaintiff's executed Employment Agreement on this motion.  (Document No. 18 at p. 4).

On the contrary – Ogury maintained Plaintiff's original ink signed Employment Agreement, and Ogury's counsel is currently in possession of the original Employment Agreement which can be furnished to the Court upon request. (Liu Decl. ¶ 17).

- 6 -

# ARGUMENT

## I. PLAINTIFF CONCEDES HER NEW YORK STATE AND CITY LAW CLAIMS ARE SUBJECT TO ARBITRATION AND FALL WITHIN THE SCOPE OF THE PARTIES' ARBITRATION AGREEMENT.

It is undisputed on this motion that Ogury's Dispute Resolution Paragraph setting forth the parties' agreement to arbitrate is enforceable, and that Plaintiff's claims fall within the scope of the agreement. It is further undisputed that the handwritten signature affixed to Plaintiff's Employment Agreement is Plaintiff's signature, signifying Plaintiff's agreement to be bound by the terms of her Employment Agreement with Ogury. Plaintiff does not raise these issues in opposition, and has therefore waived any arguments in this regard.[2] See AT&T Corp. v. Syniverse Techs., Inc., No. 12-CV-1812, 2014 U.S. Dist. LEXIS 125256, at *24, 2014 WL 4412392 (S.D.N.Y. Sep. 8, 2014) (collecting cases and noting the silence of a party who does not even discuss an issue in its opposition brief concedes the point through failing to address it).

Instead, on opposition Plaintiff takes issue with the version of the signed Employment Agreement produced by Ogury because she claims she does not recall signing a clean version of the Employment Agreement, and alleges the agreement she signed had notations affixed to it. Plaintiff also vaguely claims that she believes she made additional changes to the Unfair Competition Paragraph of the Employment Agreement, and thinks she made changes to other paragraphs as well, although she "cannot recall every edit" she allegedly made. (Doc. No. 20 at ¶ 16).

Since Plaintiff concedes that Ogury's Dispute Resolution language is enforceable, and that her claims in this action fall within the scope of the Dispute Resolution Paragraph, the

---

[2] Plaintiff further does not oppose Ogury's position with respect to Plaintiff's waiver of the right to a jury trial. Accordingly, to the extent the Court does not compel arbitration, the Court should enforce the jury waiver provision contained in Plaintiff's Employment Agreement at ¶ 13.

sole remaining issue on this motion is whether there was an agreement to arbitrate.  For the reasons set forth below, Ogury has conclusively established an agreement to arbitrate to which Plaintiff fails to raise a genuine issue of fact in response, justifying an order dismissing this action and compelling arbitration.

## II.   OGURY SATISFIED ITS BURDEN OF ESTABLISHING AN AGREEMENT TO ARBITRATE AND PLAINTIFF FAILS TO RAISE AN ISSUE OF FACT.

A party seeking to compel arbitration need only make a "prima facie initial showing that an agreement to arbitrate exists," after which "the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'"  Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010) (internal citations omitted).  Subsequently, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010) (citing Green Tree Fin. Corp.—Alabama v. Randolph, 531 U.S. 79, 91-92 (2000)).

Ogury has more than satisfied its burden on this motion to establish the existence of an agreement to arbitrate by: (1) producing the Initial Employment Agreement and signed Employment Agreement executed by Plaintiff reflecting changes made to address Plaintiff's requests to the Unfair Competition and Notices Paragraphs; (2) producing the sworn declarations of two witnesses; (3) maintaining Plaintiff's original Employment Agreement; (4) producing email correspondence memorializing the discussions surrounding Plaintiff's Employment Agreement, and (5) producing the email from Ogury's scanner forwarding the fully-executed Employment Agreement, including the date and time the Employment Agreement was uploaded to Ogury's electronic systems, all of which support Ogury's position. (Liu Decl.; Rutchik Decl.; Exs. "A" & "B" to Liu Decl.; Exs. "A" & "B" to Rutchik Decl.); see also Barreto v. JEC II, LLC, No. 16-CV-9729, 2017 U.S. Dist. LEXIS 116091, at *7, 2017 WL 3172827 (S.D.N.Y. July 25, 2017)

(compelling arbitration noting defendant satisfied its initial burden of establishing an agreement to arbitrate by producing the arbitration agreement at issue).  On opposition, Plaintiff offers nothing but her self-serving vague suppositions, general denials and conspiracy theories, all of which fail to raise an issue of fact as to the parties' agreement to arbitrate as a matter of law.

A party resisting arbitration "may not satisfy this burden through 'general denials of the facts on which the right to arbitration depends'; in other words, '[i]f the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried.'"  Dill v. JPMorgan Chase Bank, N.A., No. 19-CV-10947, 2020 U.S. Dist. LEXIS 134496, *11-*12, 2020 WL 4345755 (S.D.N.Y. July 29, 2020) (quoting Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995)).  Where "the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [courts] may rule on the basis of that legal issue and avoid the need for further court proceedings."  Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017) (quoting Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, 661 F.3d 164, 172 (2d Cir. 2011)).

A.    **Plaintiff's Conclusory Allegations Fail to Raise an Issue of Fact.**

Here, Ogury's moving papers establish that an agreement to arbitrate exists and that it applies to Plaintiff's claims.  Plaintiff's opposition papers fail to offer anything except "general denials of the facts on which the right to arbitration depends."  Dill, 2020 U.S. Dist. LEXIS 134496 at 12.  Indeed, as demonstrated below, other than her conclusory assertion that she recalls marking up her Employment Agreement with Ogury – despite having no recollection as to what changes she purportedly made or what happened to this alleged version of the agreement –Plaintiff offers nothing to rebut the documents and sworn evidence found in Ogury's moving papers.  See Golden

Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) ("'The non-moving party [on a summary judgment motion] may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'") (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)).

Further, Courts have repeatedly held that the "mere assertion that one does not recall signing a document does not, by itself, create an issue of fact as to whether a signature on a document is valid – especially in the absence of any evidence that the document was fabricated." Gonder v. Dollar Tree Stores, Inc., 144 F. Supp. 3d 522, 528 (S.D.N.Y. Nov. 2, 2015) (rejecting plaintiff's argument that he did not recall signing an agreement).

Underlining the incredulous and untenable position taken by Plaintiff on opposition, Plaintiff argues the fact that the date "February 12th, 2018" is typed and appears below Mr. Pasquet's signature constitutes some evidence of impropriety on the part of Ogury. (Document No. 18 at p. 6).  Plaintiff makes this argument despite Plaintiff's knowledge that the Initial Employment Agreement sent to her on July 30, 2018 included the same typed date "February 12th, 2018."  (Liu Decl. ¶ 5; Doc. No. 19-1 at p. 14).  Indeed, the date typed "February 12th, 2018" in print below Mr. Pasquet's signature in Plaintiff's signed Employment Agreement was populated because February 12, 2018 was the date Plaintiff commenced employment with Ogury, and this date does not reflect the date Mr. Pasquet signed Plaintiff's Employment Agreement.  (Liu Decl. ¶¶ 5, 15-16). There is no requirement that the signatures on an agreement bear the same date for a valid agreement to exist and Plaintiff's flimsy attempt to raise an issue of fact on this point lacks merit, and is insufficient to defeat Ogury's motion as a matter of law.

**B.**      **It is Undisputed on This Motion That Plaintiff Did Not Contest The Agreement to Arbitrate Her Claims Warranting an Order Compelling Arbitration.**

Ultimately, Plaintiff cannot avoid the obligation to arbitrate her claims pursuant to the Dispute Resolution Paragraph of her Employment Agreement because it is undisputed that Plaintiff does not deny agreeing to arbitrate her claims with Ogury.  (Doc. No. 20.).  Further, the Dispute Resolution Paragraph of the Employment Agreement requires "***all controversies, claims, or disputes arising out of or relating to this Agreement*** or any breach thereof . . . and all claims arising out of or relating to Employee's Employment with the Company, [to] be settled solely and finally by arbitration."  (Ex. "B" to Liu Decl. at ¶ 19 (emphasis added); Ex. "B" to Rutchik Decl. at ¶ 19 (emphasis added)).    Accordingly, in addition to Plaintiff's claims in this action being subject to arbitration, the very issue of the arbitrability of Plaintiff's claims is similarly subject to arbitration.  See Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 70 (2010) (reversing order overturning decision granting motion to compel, holding an agreement to arbitrate is valid, irrevocable and enforceable even if a party challenges the contract as a whole, since as a matter of substantive federal arbitration law the arbitration provision is severable from the remainder of the contract) (quoting Buckeye Check Cashing v. Cardegna, 546 U.S. 440, 445, 447 (2006)).

Citing to Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co., Plaintiff argues on opposition that if a party alleges a contract is void, that the party need not specifically allege that the arbitration clause in the contract is void and the party is entitled to a trial on the arbitrability issue.  (Doc. No. 18 at 6);  Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co., 263 F.3d 26 (2d Cir. 2001).  Plaintiff's reliance on Sphere Drake Ins. Ltd. is misplaced, and has unquestionably been abrogated by the Supreme Court's ruling in Buckeye and Rent-A-Center, W., Inc..

Specifically, in Buckeye Check Cashing, the Supreme Court rejected the arguments considered in Sphere Drake Ins. Ltd., and conclusively determined that unless a party challenges

an arbitration clause itself in an agreement, that the issue of a contract's validity must be considered by an arbitrator.  See Buckeye Check Cashing, Inc., 546 U.S. at 445-46, 449; Rent-A-Center, W., Inc., 561 U.S. at 70.   When as here, there are "no allegations or facts plead . . challenging the validity and enforceability of the arbitration clause itself . . . the parties must arbitrate their dispute."   HDI Glob. SE v. Lexington Ins. Co., 232 F. Supp. 3d 595, 602-603 (S.D.N.Y. 2017) (granting motion to compel arbitration and denying argument the party did not assent to agreement and the agreement was void, when it was undisputed the party signed an agreement containing an arbitration clause).

Since it is undisputed Plaintiff did not contest agreeing to arbitrate her claims with Ogury, and Plaintiff does not produce any evidence to raise any issue of fact as to her assent to arbitrate her claims, dismissal is appropriate.  See id.  Plaintiff's argument that her contract with Ogury is "void" fails to salvage her claims in this respect.

## III.   EVEN IF PLAINTIFF DID NOT SIGN HER EMPLOYMENT AGREEMENT SHE CONSENTED TO ARBITRATE HER CLAIMS BY CONTINUING HER EMPLOYMENT WITH OGURY.

Even if Plaintiff had not signed her Employment Agreement with Ogury, her agreement to arbitrate would still be enforceable because it is undisputed Ogury made Plaintiff aware that she was required to arbitrate all claims by sending her the Initial Employment Agreement on July 30, 2018 containing the Dispute Resolution Paragraph, and she continued in her employment and did not object to the Dispute Resolution Paragraph.  (Doc. No. 19-1; Doc. No. 20 generally); see also Rightnour v. Tiffany & Co., 239 F. Supp. 3d 744, 753 (S.D.N.Y. 2017) (collecting cases and noting when a party is provided with a requirement to arbitrate, and does not contest and reject the provision and continues to remain in employment, that the employee's

continuing to work for the employer, even in the absence of a signed document, manifests the employee's assent to arbitrate).

New York law does not require an employee to sign an arbitration agreement to be bound by its terms, and Plaintiff does not even allege that she objected to agreeing to arbitrate, or that she sought to opt out of her agreement to arbitrate.  See Thomas v. Public Storage, Inc., 957 F. Supp. 2d 496, 499 n.2 (S.D.N.Y. 2013 (holding "continued employment, without more, is sufficient, to manifest assent to arbitration where an employee received documents that contained such information, continued with her employment, and did not opt out of arbitration.").

Here, while Plaintiff signed an Employment Agreement agreeing to arbitrate her claims with Ogury, even in the absence of a signed agreement, her claims are still subject to dismissal and an order compelling arbitration is warranted.

## IV.     THE COURT SHOULD DISMISS PLAINTIFF'S ACTION SINCE PLAINTIFF DOES NOT REQUEST A STAY.

"[A]bsent a statutory mandate to stay proceedings, district courts enjoy an inherent authority to manage their dockets" and may properly dismiss an action when granting a motion to compel arbitration if none of the parties requests a stay.  Benzemann v. Citibank N.A., 622 F. App'x 16, 18 (2d Cir. 2015);  Valdez-Mendoza v. Jovani Fashion Ltd., No. 15-CV-7261, 2017 U.S. Dist. LEXIS 17939, at *8, 2017 WL 519230 (E.D.N.Y. Feb. 7, 2017) (collecting case and holding since "no party has requested a stay" that there were "no grounds to deny Defendant's motion to dismiss.").

Because Plaintiff does not request a stay of this action, and Plaintiff's claims are all subject to arbitration, no useful purpose would be served by granting a stay in this matter. Accordingly, for these reasons and all the reasons set forth in Ogury's initial moving papers, the Court should dismiss this action and compel arbitration.

- 13 -

## **CONCLUSION**

For all the foregoing reasons as well as the reasons set forth in Ogury's initial moving papers, Ogury respectfully requests the Court issue an order: (1) compelling Plaintiff to arbitrate her claims; (2) dismissing this action as a matter of law; and (3) awarding Ogury such further relief as the Court deems just and appropriate.

Dated: April 23, 2021
         New York, New York

                                        Respectfully Submitted,

                                        JACKSON LEWIS P.C.


                                        */s/ Tania J. Mistretta*
                          By:    Wendy J. Mellk
                                 Tania J. Mistretta
                                 666 Third Avenue, 29th Floor
                                 New York, New York 10017

                                 *Attorneys for Defendant*
                                 *Ogury Inc., d/b/a Ogury Limited*

- 14 -