UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MEAGHAN KING,

                                                        Plaintiff

        -against-

OGURY, INC d/b/a OGURY LIMITED and EVAN RUTCHIK, in his individual and professional capacities,

                                                        Defendants.

Civil No. 21-CV-1752 (JPO) (SDA)

**DECLARATION OF JIMMY LIU IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION**

        Jimmy Liu, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

        1.     I am the Head of Finance, U.S. for Ogury, Inc. d/b/a Ogury Limited ("Ogury" or the "Company"). As such, I have personal knowledge of the facts set forth in this declaration.

        2.     I submit this declaration in support of Ogury's motion, pursuant to the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and 12(b)(6), the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA"), and the Local Rules of this Court to dismiss the action filed by Plaintiff Meaghan King ("Plaintiff") and compel arbitration.

        3.     Ogury hired Plaintiff as a Sales Manager in its New York City Office on or around February 12, 2018.

        4.     On July 30, 2018, I emailed Plaintiff a copy of her Initial Employment Agreement for her review and consideration. I requested Plaintiff reach out to me if she had any questions and if not, requested that she sign the agreement so that I could arrange to have Ogury's Chief Executive Officer, Thomas Pasquet, counter-sign the agreement. A copy of my email

exchange with Plaintiff regarding her Initial Employment Agreement is annexed hereto as Exhibit "A."

5.  The Initial Employment Agreement I sent to Plaintiff indicated both on the first page, and the signature page under the space for Thomas Pasquet, Ogury's Chief Executive Officer, to sign that it was dated February 12, 2018. Specifically, typed under Mr. Pasquet's name and title, the words "February 12th, 2018" appeared in typed print in the Initial Employment Agreement I sent to Plaintiff on July 30, 2018. Mr. Pasquet had not signed Plaintiff's Initial Employment Agreement as of July 30, 2018. The February 12, 2018 date was simply populated into the Initial Employment Agreement since this was the date Plaintiff commenced employment at Ogury.

6.  After several months passed with no response from Plaintiff, I followed up with her on December 18, 2018 by email to request Plaintiff let me know if she had any questions regarding the Initial Employment Agreement, and barring any, requested that she return a signed copy. (Exhibit "A").

7.  After receiving no response from Plaintiff, I followed up with Plaintiff again by email on December 29, 2018 and January 25, 2019. (Exhibit "A").

8.  On January 25, 2019, Plaintiff responded indicating that she planned to have an attorney review the Initial Employment Agreement and that she was not comfortable signing the Initial Employment Agreement as written.

9.  In response to Plaintiff's email, Evan Rutchik, Ogury's then Chief Revenue Officer, offered to meet with Plaintiff in person to discuss her concerns.

10.  I understand that on or around February 4, 2019, Mr. Rutchik met with Plaintiff and discussed her concerns regarding the Initial Employment Agreement. On February

4, 2019, Mr. Rutchik emailed Plaintiff indicating that they had met that day, and that Ogury would send a word version of Plaintiff's Employment Agreement so that Plaintiff could "track changes" to "make the suggested edits to the Non-Compete section." (Exhibit "A"). I understand Plaintiff did not sign her Initial Employment Agreement during the February 4, 2019 meeting with Mr. Rutchik.

11. Mr. Rutchik and Plaintiff subsequently discussed by email that instead of Plaintiff sending "tracked changes" that she could discuss what areas of the Initial Employment Agreement she found concerning so that Mr. Rutchik could address the provisions for her. (Exhibit "A"). I assisted Mr. Rutchik with revising Plaintiff's Initial Employment Agreement.

12. On February 15, 2019 at 3:55 p.m., I emailed a word version of the Initial Employment Agreement I provided to Plaintiff to Mr. Rutchik. (Exhibit "A").

13. Shortly after, on February 15, 2019 at 4:00 p.m., Mr. Rutchik emailed me a revised Employment Agreement that included several revisions to print for Plaintiff's signature. Mr. Rutchik's email forwarding the accompanying word version of the Employment Agreement is annexed hereto at Exhibit "A."

14. Specifically, the Employment Agreement Mr. Rutchik and I worked on eliminated several lines of language from Paragraph 6, "Unfair Competition" by narrowing the types of businesses that would be considered competition from: "business entity engaged in the mobile data collection and mobile advertising business and related products and services for the advertising and related industries'" to: "business entity whose primary business is engaged in mobile data collection via a proprietary SDK". (Exhibit "A"). The Employment Agreement also reflected changes to Plaintiff's home address in Paragraph 15, "Notices." (Exhibit "A").

15. On February 15, 2019, I printed a copy of the revised Employment

Agreement for Mr. Rutchik to provide to Plaintiff for her signature. Shortly after, Mr. Rutchik came by my office and provided me with Plaintiff's original, ink signed Employment Agreement. I immediately provided Plaintiff's original signed Employment Agreement to Mr. Pasquet to collect his signature.

16. After collecting both Plaintiff and Mr. Pasquet's signatures on Plaintiff's Employment Agreement, I immediately scanned the Employment Agreement to myself to save a copy for Ogury's files. By scanning the fully-executed Employment Agreement to myself using Ogury's scanners, an email was generated from "ogury.co@gmail.com" to my work email address forwarding the scanned fully-executed copy of the Employment Agreement. A copy of the email from Ogury's scanner to myself dated February 15, 2019 at 4:55 p.m. forwarding the fully-executed copy of Plaintiff's Employment Agreement is annexed hereto as Exhibit "B."

17. After scanning the electronic copy of Plaintiff's Employment Agreement, I placed Plaintiff's original signed Employment Agreement in a file drawer in my office. I retained Plaintiff's original signed Employment Agreement until I provided it to Ogury's counsel as part of Ogury's motion.

18. At no point in time did Plaintiff ever express any objection to me regarding the Dispute Resolution Paragraph of Plaintiff's Employment Agreement, under which she agreed to arbitrate her claims with Ogury.

19. At no point in time did Plaintiff or anyone else present me with a "marked up" Employment Agreement, and I have no knowledge of Plaintiff ever personally marking up by hand any version of her Employment Agreement.

20. The documents attached to this declaration are kept by Ogury in the ordinary course of its regularly conducted business activities.

Pursuant to 28 U.S.C. §1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April ____, 2021

4/23/2021

*Jimmy Liu*
4668B014F0B44FA...

_____
JIMMY LIU